UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATRINA PERKINS,
as Natural Guardian and Parent of Lashedica Mason,

                      Plaintiff,

                                                                           DECISION AND ORDER

                                                                            06-CV-6585L

           v.

CITY OF ROCHESTER,

                      Defendant.
_____

## **INTRODUCTION**

Plaintiff Katrina Perkins ("plaintiff"), as natural guardian and parent of Lashedica Mason ("Lashedica"), brings this action against defendant the City of Rochester (the "City"). Plaintiff alleges that on July 10, 2005, the City failed to properly train and supervise its employees, and failed to properly respond to a 9-1-1 call for emergency assistance made by Perkins, resulting in Lashedica's being shot and injured by a City police officer, all negligently and in violation of 42 U.S.C. §1983.

On the evening of July 10, 2005, plaintiff called the City's 9-1-1 emergency number from her address at 30 St. Jacob Street, Rochester, and requested that "someone come out please" to assist with her 13-year-old daughter Lashedica, who had locked herself in an upstairs bathroom with a knife and was threatening to harm herself. The 9-1-1 operator told plaintiff that police and ambulance services were being dispatched.

City police officer Mark Simmons ("Simmons") was the first to arrive on the scene. He was greeted outside the door of the home by another of plaintiff's daughters, fourteen-year-old Equilla Perkins ("Equilla"). Equilla explained that Lashedica was still upstairs with a knife, and she brought Officer Simmons into the house. As Equilla and the officer stepped inside the home, they entered the family room, where plaintiff and some of her other children, including eighteen-year-old Lakeyria Mason, as well as grandchildren, were gathered. Moments later, Lashedica emerged from upstairs and stepped into the adjacent kitchen, where she proceeded to rattle some items in or around a dish rack as Officer Simmons asked the family, "is this her?" Before anyone could respond, Lashedica exited the kitchen and walked or ran toward Equilla, who was standing slightly in front of Officer Simmons. Plaintiff's and Lashedica's initial statements to police, as well as Lashedica's initial deposition and all of the other statements and deposition testimony by Equilla, Lakeyria and Officer Simmons, reported that Lashedica was holding a kitchen knife in one hand, and a telephone in the other.[1] As Lashedica drew within eight feet of Equilla and Officer Simmons, he swept Equilla

---

[1] Both Lashedica and plaintiff have twice been examined under oath in connection with the instant lawsuit: initially, in December 2005 as part of a hearing pursuant to N.Y. Gen. Mun. Law §50-h, and again in 2007 as part of formal discovery after the matter was removed from state court. In her initial statement to police and in the 2005 examination, Lashedica admitted entering the living room with a knife. In 2007, she flatly denied carrying the knife into the living room. Plaintiff testified both times that although her initial statement to police was that "[Lashedica] had a knife in her left hand and the phone in her right hand," plaintiff could no longer be sure whether Lashedica has been carrying a knife. (Dkt. #11, Att. 19-24, Exhs. Q-V). The Court notes that these self-serving changes in the plaintiff's and Lashedica's recollections occurred during or after the initiation of this lawsuit.

The plaintiff's testimony that she could not ascertain whether Lashedica was armed, although less damaging to her case than her initial statement, does not contradict the testimony of the witnesses who did observe whether Lashedica was carrying a knife, or otherwise create a material question of fact. As for Lashedica's shifting narrative, this is not a case of mere elaboration or minor inconsistencies between examinations. *Cf. Hayes v. New York City Dep't of*

(continued...)

- 2 -

behind him, backed toward the door, drew his service weapon, and fired at Lashedica, injuring her.[2]

The City now moves for summary judgment pursuant to Fed. R. Civ. Proc. 56 to dismiss plaintiffs' claims, on the grounds that it did not maintain any unconstitutional policy or practice relative to 9-1-1 call responses, that the City's response was not negligent in any event, and that the City is entitled to governmental immunity. For the reasons set forth below, the City's motion for summary judgment (Dkt. #11) is granted and the complaint is dismissed.

## DISCUSSION

### I.     Summary Judgment

Summary judgment will be granted if the record demonstrates that "there is no genuine issue

---

[1](...continued)
*Corrections*, 84 F.3d 614, 619-620 (2d Cir. 1996) (court cannot disregard a subsequent deposition as if it were a contradictory affidavit crafted to oppose summary judgment where, inter alia, the subsequent deposition is "only arguably contradictory" to the first). Rather, Lashedica has offered two, flatly contradictory statements concerning the pivotal and polar question of whether she was brandishing a knife when she entered the living room. A party cannot defeat summary judgment by abruptly offering different, fluctuating or wholly contradictory versions of the salient events, and I therefore conclude that Lashedica's deposition testimony is insufficient to create a material question of fact. *See e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 555, 555 n.2 (2d Cir. 2005) (although "the court considering a summary judgment motion should not disregard [a party's] later testimony because of an earlier account that was *ambiguous, confusing or simply incomplete*," where the testimony was clear and complete the court may conclude that "the facts alleged are so contradictory that doubt is cast upon their plausibility" and grant summary judgment dismissing the claim).

[2] According to the local media, Lashedica was hit in the finger, arm and abdomen and sustained serious injuries. After surgery to remove her gall bladder and an extended hospital stay, it was reported in July 2005 that she was expected to make a full physical recovery. *See* RNews, *Mayor Has Some Advice for Community* (July 13, 2005) <http://www.rnews.com/?ArID=328654>; RNews, *RPD:Shooting of Girl "Justified"* (July 11, 2005) <http://www.rnews.com/?ArId=328599>.

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

## II. Plaintiff's Claims Pursuant to Section 1983

The Court notes initially that plaintiff has not opposed the defendant's motion insofar as it seeks to dismiss plaintiff's Section 1983 claim. Thus, the only question for the Court to determine is whether, on the present record, the City is entitled to judgment as a matter of law on that claim.

In order to maintain a cause of action pursuant to Section 1983, a plaintiff must demonstrate that the City violated her Constitutional or federal statutory rights, and that the City did so while acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Where a Section 1983 claim is alleged against a municipality on the grounds of unconstitutional acts by its employees, a plaintiff must demonstrate that her injuries resulted from a municipal policy, custom, or practice. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (a municipality "may not be sued under §1983 for an injury inflicted solely by its employee . . . it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under §1983").

Here, plaintiff alleges that the City maintains a custom, policy and practice of failing to deploy appropriately trained personnel to service calls involving emotionally disturbed persons, and argues that Lashedica would never have been injured on July 10, 2005 had a member of the

Rochester City Police Department's Emotionally Disturbed Persons Response Team ("EDP Team") been dispatched to assist her.

"To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Rather, a plaintiff may satisfy her burden by showing, "for example, that [the unconstitutional] practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law,' or that [an unconstitutional] practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.*, 375 F.3d 206 at 226, *quoting Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-871 (2d Cir. 1992). However, "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Damiano v. City of Amsterdam*, 466 F. Supp. 2d 456, 465-66 (N.D.N.Y. 2006), *citing Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Plaintiff offers no evidence that the City maintains a custom or policy of inappropriately staffing its responses to requests for emergency assistance involving emotionally disturbed persons. It is undisputed that in response to plaintiff's call regarding an armed and potentially suicidal teenager, the City immediately dispatched both law enforcement and an ambulance. Under the circumstances, there is simply no evidence to suggest that the City's response to plaintiff's 9-1-1 call was part of a custom or policy of unconstitutional failure to respond appropriately to calls for emergency assistance. Furthermore, plaintiff offers no evidence that the City has, in any other case, sent emergency responders in fields of expertise that are so foreign to the caller's perceived needs as to raise constitutional concerns. *See Okin v. Cornwall-On-Hudson Police Dep't*, 2006 U.S. Dist.

LEXIS 75881 (S.D.N.Y. 2006) ("[o]rdinarily, a plaintiff must point to facts from cases other than her own to support an allegation of a policy on the part of a municipality" in connection with a Section 1983 claim).

To the extent that the plaintiff's claim is that the City violated her constitutional rights by failing to apply its own policy relating to the selection of 9-1-1 responders in a uniform and nondiscriminatory manner, plaintiff has still produced no evidence of such a policy. Although plaintiff claims that it was the City's practice to dispatch one or more EDP Team members in response to all calls which potentially involved a mentally disturbed person – an allegation that the City disputes – the only evidence plaintiff offers in support of that contention is her own allegation of a statement by former City Police Chief Robert Duffy. Such a statement, which plaintiff concedes is inadmissible hearsay and is the only proof offered by plaintiff in support of the alleged policy, is by itself insufficient to overcome summary judgment. *See Patterson*, 375 F.3d 206 at 219 (Fed. R. Civ. Proc. 56(e)'s requirement that an affiant have personal knowledge of the matters asserted in an affidavit also means that an affidavit's hearsay assertions – assertions that would be inadmissible at trial if testified to by the affiant – are also insufficient to create a genuine issue for trial).

Because plaintiff has failed to demonstrate the existence of an unconstitutional custom or policy on the part of the City, her Section 1983 claim must be dismissed.

**III. Plaintiff's Negligence Claims**

Plaintiff also claims that the City's response to her 9-1-1 emergency assistance request was negligent, and that the City negligently trained, supervised and retained Officer Simmons.

As a general rule, municipalities are not liable for injuries arising out of alleged failures concerning the provision of law enforcement services to specific individuals, because "a

municipality's duty to provide police protection is owed to the public at large rather than to any individual or class of citizens, and questions of resource allocation, such as how much protection a municipality must provide to an individual or class, are left to the discretion of the municipal policy makers." *Raucci v. Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990), *citing Cuffy v. City of New York*, 69 N.Y.2d 255, 260 (1987).

However, in exceptional circumstances, a municipality may be held liable in tort for such injuries if a "special relationship" exists between the plaintiff and the municipality. *See Raucci*, 902 F.2d 1050 at 1055; *Sorichetti v. City of New York*, 65 N.Y.2d 461 (1985). To prove a special relationship, a plaintiff must establish: (1) an assumption by the municipality, either through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that failure to act could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) the injured party's justifiable reliance upon the municipality's affirmative undertaking. *Raucci*, 902 F.2d 1050 at 1055; *Damato v. City of New York*, 2008 U.S. Dist. LEXIS 39142 at *8 (S.D.N.Y. 2008); *Cuffy*, 69 N.Y.2d 255 at 260. Generally, "[a]n assurance to perform a basic police function, without more, does not amount to a promise to act affirmatively on behalf of plaintiffs." *Damato*, 2008 U.S. Dist. LEXIS 39142 at *11 (no reasonable jury could find that where civilian complained to police about gang activity and threats, and police promised to "keep a car in the area," a special relationship was created between plaintiffs and the police whereby the police officers were obligated to keep watch at plaintiffs' home).

Here, plaintiff does not claim that the City failed to timely respond to her 9-1-1 request to "send someone." In fact, the response was immediate. Rather, plaintiff claims that the City was

negligent because it failed to respond to her request by sending the specific kind of assistance she "figured" the City would provide. Plaintiff contends that because she had attempted to inform the operator that her daughter was on "depression drugs," and expressed concern that Lashedica might hurt herself, the 9-1-1 operator's statement that "we've got the police and an ambulance on their way over," somehow contained an implicit "promise," and assumed an affirmative duty, to send one or more responders who were members of the EDP Team. I disagree.

Construing all inferences in favor of plaintiff as the nonmovant, I cannot conclude that the City assumed an affirmative duty to dispatch an EDP Team member, or that the plaintiff could have reasonably believed that it had done so, let alone relied upon it. As the audio recording of the plaintiff's emergency 9-1-1 call submitted by the City attests (Dkt. #11, Att. 14, Exh. L), plaintiff never mentioned or requested an EDP Team member or a mental health professional.

Moreover, assuming *arguendo* that plaintiff had specifically requested mental health assistance as she avers she did in her affirmation opposing summary judgment, the 9-1-1 operator's promise to send the police and an ambulance constituted a bare "assurance to perform a basic police function," and did not, by any reasonable interpretation, "amount to a promise to act affirmatively on behalf of plaintiffs" in some other and more specific way. *Damato*, 2008 U.S. Dist. LEXIS 39142 at *11.

A telephone call seeking emergency assistance cannot be analyzed as if it were a mere order for room service, which by its nature carries with it the expectation of a response that is tailored to the caller's expressed preferences and expectations. The law simply does not require emergency dispatchers and responders to forego exercise of their professional discretion and allocate their resources in a manner consistent with the assumptions of the caller, nor can a caller presume that a

particular type of assistance will be rendered solely because it was requested. Here, nowhere in the 9-1-1 dispatcher's assurances to plaintiff was an EDP Team member or other mental health professional guaranteed or even discussed, and plaintiff had no reasonable basis to assume that one would be sent to her home. *Cuffy*, 69 N.Y.2d 255 at 260. Plaintiff thus cannot demonstrate that the City owed a special duty to her and/or Lashedica, and the City cannot be held liable for its response to plaintiff's 9-1-1 call on a negligence theory.

By the same token, plaintiff's claims of negligent hiring, training and retention must be dismissed. "It is well settled under New York law that "[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting *outside* the scope of [his] employment." *Stokes v. City of New York*, 2007 U.S. Dist. LEXIS 32787 at *53 (E.D.N.Y. 2007) (emphasis added), *quoting Colodney v. Continuum Health Partners, Inc.*, 2004 U.S. Dist. LEXIS 6606 (S.D.N.Y. 2004). Where an employee is acting within the scope of his employment, the employer's liability for his conduct is imposed by the theory of *respondeat superior*, and no recovery can be had against the employer for negligent hiring, training or retention.[3] *See Stokes*, 2007 U.S. Dist. LEXIS 32787 at *53-*54; *Murns v. City of New York*, 2001 U.S. Dist. LEXIS 6287 at *16-*17 (S.D.N.Y. 2001); *Liddell v. Slocum-Dickson Med. Group, P.C.*, 273 A.D.2d 924 (4th Dept. 2000). There is no dispute that Officer Simmons was acting within the scope of his employment as a City police officer during the incident at plaintiff's home in which Lashedica was injured, and thus plaintiff's claims of negligent hiring, training and supervision must be dismissed.

Having found that the City cannot be held liable for negligence in connection with the

---

[3] Officer Simmons is not a party to this action, and plaintiff has not asserted any claims against the City on a *respondeat superior* theory.

plaintiff's claims, the Court does not reach the City's affirmative defense of governmental immunity.

## CONCLUSION

Any shooting involving a police officer and a citizen is a troubling affair. Police officers often are required to make instant decisions affecting life and property. Each case, though, must be analyzed on its own particular facts and the law that applies to the pleaded causes of action.

I find that there are no material issues of fact, and that the plaintiff has failed to demonstrate the existence of an unconstitutional custom or practice sufficient to subject the City to liability under 42 U.S.C. §1983, or to prove a special relationship with the City sufficient to sustain her negligence claims. The City's motion for summary judgment dismissing the complaint (Dkt. #11) is therefore granted, and the Complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
June 30, 2009.